IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JASON MERRITT OVERBEY,  )
            )
 Petitioner,       )
            )
v.            )  Civil Action No. 3:19CV583–HEH
            )
HAROLD W. CLARKE,   )
            )
 Respondent.      )

## MEMORANDUM OPINION
(Granting Respondent's Motion to Dismiss)

Jason Merritt Overby, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court of Powhattan County ("Circuit Court") of two counts of first-degree murder and two counts of use of a firearm in the commission of murder. Overby contends that he is entitled to relief on the following grounds:

1. Trial counsel was ineffective when he failed to renew a request for a change of venue following voir dire. (§ 2254 Pet. 16.)
2. Appellate counsel failed to raise the Circuit Court's denial of Overbey's motion for a change of venue. (*Id.* at 17.)
3. Appellate counsel failed to raise the Circuit Court's denial of Overbey's plea of not guilty by reason of insanity. (*Id.* at 18.)
4. The Circuit Court erred when it denied Overbey's motion to suppress statements he made to law enforcement. (*Id.* at 19.)
5. The Circuit Court erred when it overruled Overbey's objection and admitted autopsy pictures of the victims. (*Id.* at 20.)
6. The Circuit Court erred when it denied Overbey's request that the jury be instructed on voluntary manslaughter. (*Id.* at 22.)
7 The evidence was insufficient to prove that Overbey acted with premeditation in killing the victims. (*Id.* at 24.)

Respondent concedes that Overbey exhausted each of the above claims. Respondent moves to dismiss on the grounds that Overbey's claims 5 and 6 are not cognizable on federal habeas and the remaining claims lack merit. For the reasons that follow, the Motion to Dismiss will be granted.

## I. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410

(2000)). Given this standard, the decisions by the Virginia courts hold a prominent place in this Court's opinion.

Overbey fails to raise a federal constitutional violation in conjunction with Claim 5 and 6. He raises these claims merely as violations of state law, which fails to provide a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). Accordingly, Claims 5 and 6 will be dismissed.

## II. Sufficiency of the Evidence

In order to provide factual context for Overbey's remaining claims it is appropriate to first address and reject his claim that the evidence was insufficient to prove he acted with premeditation. A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

The Court of Appeals of Virginia aptly summarized the evidence of Overbey's guilt as follows:

3

> [T]he evidence proved that on May 22, 2011, Moore and Mann were working at a farm owned by Moore's father. Appellant also worked at the farm. Appellant was an avid hunter, and he frequently had firearms in his vehicle. On the morning of May 22, 2011, appellant and Moore had a disagreement. At approximately 1:00 to 2:00 p.m., Moore and Mann were working on a haybine near the shop area of the farm. Phil Knabe worked at the farm and was cutting hay with Moore's father near the main house. Knabe testified he heard three gunshots. Knabe was not suspicious because sometimes the men would target practice and hunt on the farm. Approximately ten minutes after the gunshots, Knabe saw appellant drive past him in his truck and leave the farm. Knabe testified appellant had a good relationship with Moore, but he frequently argued with Mann. At approximately 3:00 p.m., Moore's father left the hay field because he did not see any activity at the shop area. Moore's father found Moore and Mann dead on the ground near the haybine.
>
> Angela Skelton lived in a rental house on the farm, and she was employed as a bookkeeper for the farm. Skelton testified at approximately 11:00 a.m. she heard Moore yelling, but she did not know who he was fighting with. At approximately 2:00 p.m., Skelton heard three gunshots coming from the shop area, but did not investigate because the men would frequently target practice. There were two quick shots, a pause, and a third shot. Skelton testified appellant's relationship with Moore was good, but appellant had trouble getting along with Mann. Skelton testified approximately four or five weeks prior to the shooting, she saw Moore in the shop and Moore told her that he had to keep appellant and Mann separated. Skelton testified she said to appellant that she heard he was having a bad day and appellant stated he was going to shoot Mann.
>
> Detective Jeff Searfoss took photographs of the victims and of the scene. Moore was wearing work gloves, and a hammer was near his feet. Moore's body was near the haybine. Moore died from a gunshot wound to the back of his head. Mann's body was nearby, he sustained two gunshot wounds to his head, and he had been shot at close range. One of Mann's wounds was consistent was Mann being on the ground when shot. The medical examiner was unable to determine the sequence of the shots; two shots were buckshot, and one shot was birdshot.
>
> Amelia County Deputy Ian McDonald and two additional deputies went to appellant's residence in Amelia County, where McDonald handcuffed appellant. Approximately twenty to thirty minutes later, Detective Jason Tackett from Powhatan County arrived and saw appellant handcuffed and seated in McDonald's vehicle. Tackett told appellant he was investigating a shooting and asked if appellant was willing to go to the sheriff's office to talk about the shooting. Appellant replied, "I don't have

4

> anything to say without a lawyer." Tackett closed the door of the vehicle and walked away from McDonald's vehicle.
>
> McDonald testified after Tackett walked away from appellant, appellant stated three times, "They got me for murder." Later, Deputy Smith transported appellant to the Powhatan Correction Center. As Smith left appellant at the center, he wished appellant good luck, and appellant stated, "You know what the F. I did."
>
> The evidence showed that approximately five weeks prior to the shooting, appellant threatened to shoot Mann after an altercation. Appellant had a history of not getting along with Mann. On the morning of the shooting, Moore and appellant had an altercation. Later, while Moore and Mann worked on a haybine, appellant shot both men in the back. Appellant shot Mann at close range and at least once while Mann was on the ground. Appellant inflicted mortal wounds with a rifle, which created an inference he acted with premeditation. Based upon a review of the circumstances in this case, there was sufficient evidence supporting the jury's determination that appellant acted with premeditation.

(ECF No. 10-2, at 4–6.) As noted by the Court of Appeals, the evidence amply demonstrates that Overbey acted with premeditation in killing Moore and Mann. Accordingly, Claim 7 will be dismissed.

### III. Alleged Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

5

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Trial Counsel

In Claim 1, Overbey faults counsel for failing to renew his request for a change of venue after voir dire. In rejecting this claim, the Circuit Court observed:

> Prior to trial, counsel moved for a change of venue. On December 12, 2013, the trial court denied the motion, ruling that motion was "unsupported by good cause at this time." The court further ruled: "However, the issue of venue may be raised at the time of trial should a jury not be seated." Overbey contends that his counsel should have requested a change of venue because a "significant" number of potential jurors knew about the case from media coverage and "most were unsure of their impartially." (Pet. at 15, 23).
> The Court finds that [this] claim . . . satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Trial counsel moved for a venue change, but the trial court denied the motion. The trial court ruled, however, that the issue of venue may be revisited "should a jury not be seated." A jury was not only seated, but was done so with relative ease. *See Jackson v. Warden of the Sussex I State Prison*, 271 Va. 434, 451, 627 S.E.2d 776, 791 (2006) ("The ease with which a jury is selected is a critical element in determining whether venue is proper."). Contrary to Overbey's allegations, only three potential jurors indicated that they knew about the case from the news. (Tr. 40–42, 48–51). None of these potential jurors served on the jury. (Tr. 59). Indeed, the overwhelming majority of the venire, including all who served on the jury, had no preconceived notions about the case. (Tr. 43). Under these circumstances, a renewal of the venue change motion would have been futile. *See Hedrick v. Warden of the Sussex I State Prison*, 264 Va. 486, 515, 570 S.E.2d 840, 858 (2002) (finding that trial counsel was not ineffective in not making a meritless change of venue motion).
> For these reasons, Overbey has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694.

(ECF No. 10–6, at 3–4 (alterations in original).) The trial record supports the Circuit Court's observations. Because Overbey fails to demonstrate deficiency or prejudice, Claim 1 will be dismissed.

### B. Appellate Counsel

Even less meritorious is Overbey's related claim that appellate counsel acted deficiently by failing to raise the denial of his motion for change of venue on appeal. As the Circuit Court observed:

> Overbey has not overcome the presumption that he received effective assistance of appellate counsel. The change of venue issue was not clearly stronger than the issues appellate counsel raised on appeal, especially the suppression issue as to which counsel obtained review by the Court of Appeals. Indeed, appellate counsel could not have successfully challenged venue because that argument was procedurally defaulted when trial counsel failed to renew the motion at trial. *See Riner v. Commonwealth*, 268 Va. 296, 310, 601 S.E.2d 555, 563 (2004) (change of venue issue waived when counsel did renew motion). Accordingly, appellate counsel was not ineffective for failing to raise a venue issue. *See Jerman*, 267 Va. at 441, 593 S.E.2d at 260 (finding that appellate counsel was not ineffective for not raising an issue that had been procedurally defaulted).
>
> Moreover, Overbey has not demonstrated that appellate counsel should have raised a change of venue argument under a "good cause" exception and that such an argument would have likely succeeded on appeal. As discussed in claim A, the trial court was able to seat a jury with relative ease; thus, a change of venue was not warranted. *See Jackson*, 271 Va. at 451, 627 S.E.2d at 791 (finding appellate counsel was not ineffective for not arguing change of venue where jury had been seated with relative ease). And contrary to Overbey's allegations, the overwhelming majority of the venire had not heard of the case and, of the few that did, none of them served on the jury. Given the total lack of evidence that he could not receive a fair trial in Powhatan County, Overbey has not demonstrated that this case was one of the "extreme instances" where a "presumption of prejudice" existed.
>
> For these reasons, Overbey has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694.

(*Id.* at 6–7.) The Court discerns nothing unreasonable about the Circuit Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim 2 will be dismissed.

Next, in Claim 3, Overbey faults appellate counsel for not challenging the Circuit Court's denial of his plea of not guilty by reason of insanity. As observed by the Circuit Court, this claim lacks merit:

> Overbey was twice psychologically evaluated and deemed sane at the time of the offense. Overbey acknowledges that those opinions were not challenged at trial. Overbey argues, however, that there existed an argument that could have been made to the appellate court that those opinions were given in error. Overbey primarily relies upon the fact that, for a portion of time, he was deemed incompetent to stand trial.
> The Court finds that claim C satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. As previously discussed, counsel's choice of which issues to raise on appeal is virtually unassailable. *See Morrisette*, 270 Va. at 191, 613 S.E.2d at 555. Here, appellate counsel's choice issues fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This is most illustrated by the fact that the Court of Appeals granted review of Overbey's appeal.
> Furthermore, Overbey did not enter a "plea" of not guilty by reason of insanity. Rather, he was twice psychologically evaluated as to whether he was sane at the time of the offense. Dr. Evan Nelson determined that Overbey was sane, concluding "that the main problem with Mr. Overbey's mental state that day was voluntary intoxication and its side effects." (Pet. Ex. 3). Dr. J. Randy Thomas likewise determined that Overbey was sane, concluding that "[t]he defendant was able to understand the nature[,] character and consequences of his behaviors, appreciate their wrongfulness and was able to control and restrain his behaviors with respect to the alleged offenses." (Pet. Ex. 3).
> As Overbey concedes, trial counsel did not challenge the opinions of Dr. Nelson and Dr. Thomas. Because the issue had not been challenged at the trial level, appellate counsel was not ineffective for failing to raise the issue on appeal. *See Jerman*, 267 Va. at 441, 593 S.E.2d at 260; (appellate counsel is not ineffective for failure to raise defaulted issue); *Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (same). And given that two psychologists concluded that Overbey was sane at the time of the offense, Overbey has not demonstrated a reasonable probability that such an issue would have been successful on appeal. *See Williams v. Warden of Sussex I State Prison*, 278 Va. 641, 648, 685 S.E.2d 674, 678 (2009) (holding that petitioner failed to

prove prejudice where he failed to show reasonable probability that appeal would have been successful).

For these reasons, Overbey has failed to demonstrate that appellate counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694.

(ECF No. 10–6, at 7–9 (alterations in original).) Once again, the Court discerns nothing unreasonable about the Circuit Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim 3 will be dismissed.

## IV. Denial of Motion to Suppress

In Claim 4, Overbey contends that the Circuit Court erred when it denied his motion to suppress. The Court of Appeals of Virginia issued a published opinion and made the following thorough findings and conclusions with respect to this claim:[1]

> Appellant was arrested on two counts each of first-degree murder and use of a firearm in the commission of a felony on May 22, 2011, after Kenneth Moore, Jr. and Robert Mann were found shot and killed on the Moore family farm. Kenneth Moore, Sr. was appellant's employer at the time. Appellant was indicted for these offenses on February 14, 2012. On April 5, 2012, appellant filed a motion to suppress certain statements he made to police based upon alleged violations by the police of appellant's rights under the Fifth, Sixth, and Fourteenth Amendments.
> On May 22, 2011, Deputy McDonald located appellant and informed him that he was not under arrest but that "he was being detained for a situation that happened in Powhatan." Appellant was then handcuffed and seated in Deputy McDonald's patrol car. Deputy McDonald testified that as he walked appellant to his vehicle, appellant said that he did not want to make any statements, however appellant then continued talking. Deputy McDonald and appellant were seated in the patrol vehicle when Detective Tackett arrived and asked to speak with appellant. At that time, appellant stated "I don't have anything to say without a lawyer." Detective Tackett testified that he then walked away and Deputy McDonald testified that as soon as Detective Tackett walked away, appellant "began to cry and stated

---

[1] The Court has omitted the footnotes from the following quotation.

9

they got me for murder, they got me for murder." No other interaction occurred between appellant and law enforcement at that time.

Appellant was eventually transported to the Powhatan Correctional Center by Corporal Smith. According to Corporal Smith's testimony, as he dropped appellant off at the center, he wished appellant "good luck." Appellant then responded, "Good luck. You know what the 'F' I did." Appellant then asked Corporal Smith why the police were obtaining a search warrant for the single-family residence where he was apprehended. Corporal Smith responded, "to look for evidence and maybe a gun." Appellant then stated "you will never find that."

On May 23, 2011, Detective Wentworth transferred appellant from the Powhatan Correctional Center to the Powhatan Sheriff's Department in order to interview him along with Lieutenant Wolfe. As he was not involved in the events of the previous evening, Detective Wentworth had apparently been informed that "there were some questions whether [appellant] actually requested a lawyer and was actually charged officially," so "[Detective Wentworth] was told to transport [appellant] and record any utterances that he might have made." To that end, Detective Wentworth transported appellant in a patrol car with a built-in recording device and also brought a back-up recording device in his pocket.

An audio recording of Detective Wentworth's conversation with appellant was introduced into evidence at the hearing on appellant's motion to suppress. Detective Wentworth stated that he introduced himself to appellant and asked him his name. Appellant mumbled things during the ride, and Detective Wentworth asked him to speak up as he could not understand him. Detective Wentworth asked appellant some other benign questions, and appellant "rambled on about working for [Moore]." Detective Wentworth then said that while he didn't know Moore, "he could be hard to work for from what [he had] heard." Appellant then stated several unsavory things about Moore's character and behavior. At some point during the ride, appellant complained about having a headache and Detective Wentworth said that "it might benefit [appellant] to talk to somebody and tell the truth. The truth matters." Detective Wentworth also testified that at some point, appellant stated that he was "screwed" and would never get out of this. Finally, Detective Wentworth said to appellant as they exited the vehicle "I'm really concerned about the firearm, if it's in a safe manner."

Lieutenant Wolfe testified that on the morning of May 23, 2011, he contacted the Powhatan Commonwealth's Attorney's office to determine whether appellant properly requested an attorney or whether he could interrogate appellant. Lieutenant Wolfe testified that he was informed that he was legally permitted to speak to appellant. Prior to interrogating him, Lieutenant Wolfe testified that he advised appellant of his *Miranda* rights and presented appellant with a waiver form. This was apparently the first

time that appellant was *Mirandized.* Lieutenant Wolfe stated that he read the form to appellant and told him that the form says ... that you understand what your rights are. It's not saying that you're going to talk to me or anything like that. So I just need to see if you could sign right here saying that you understand I have advised you. And that that is all that that means. Do you understand that? So you or [*sic*] would you sign that saying that you understand that we are under agreement on that.

    Lieutenant Wolfe did not read the part of the form that said appellant waived his rights by signing the form. Lieutenant Wolfe then removed appellant's handcuffs, and appellant apparently mumbled something about not being able to afford a lawyer anyway and signed the waiver form.

    During the subsequent questioning, appellant made several statements to Lieutenant Wolfe, which were eventually admitted at appellant's trial. Lieutenant Wolfe testified that appellant stated, "I ain't getting out of this s— — anyway, man. God—— mother——." Appellant admitted to being at the Moore family farm on May 22, 2011, with both of the victims and recounted that Moore yelled at him and threatened to "kick [appellant's] ... ass," which angered appellant. When Lieutenant Wolfe outlined his theory of the case to appellant based on his review of the scene and relevant evidence, which, in short, had appellant shooting both victims from behind, appellant told Lieutenant Wolfe, "That's what happened." Appellant also told Lieutenant Wolfe that he used a 20–gauge shotgun, which he later placed in the woods near his father's house. Lieutenant Wolfe admitted that he alluded to the unrecovered firearm during the interrogation and that he did so not just to incriminate appellant, but "for the safety of the other people that are out on the street or wherever the weapon may be. ..." Eventually, appellant agreed to lead the authorities to the shotgun and Lieutenant Wolfe testified that the authorities would not have found the shotgun without appellant's cooperation.

    Appellant did not challenge the admissibility of his statements to Deputy McDonald and Corporal Smith in his motion to suppress, nor does he challenge them on appeal. Appellant admits that those statements were spontaneous and not in response to police questioning. Appellant does, however, challenge the admission of statements he made the following day to Detective Wentworth and Lieutenant Wolfe. Though the trial court denied appellant's motion to suppress statements made to both Detective Wentworth and Lieutenant Wolfe, because the statements appellant made to Detective Wentworth in the car on May 23, 2011, were not admitted at appellant's trial, we will not consider their admissibility.

    Appellant argued in his motion to suppress that his Fifth Amendment rights were triggered when he was handcuffed, placed in Deputy McDonald's vehicle, and denied the right to leave at his discretion. From appellant's perspective, while Deputy McDonald told appellant that he was being

11

detained, appellant was in fact in custody, at which time he made a clear, unequivocal request for counsel. Appellant argued that he did not subsequently reinitiate conversation with law enforcement. Notwithstanding the signed waiver form, appellant further argued that he did not knowingly or intelligently waive his rights. Finally, appellant contended that he was entitled to an attorney under the Sixth Amendment following the issuance of arrest warrants, his appearance before the magistrate, and the magistrate's ruling on bond.

At the hearing on the motion to suppress, the Commonwealth argued that appellant did not properly invoke his right to an attorney under the Fifth Amendment. The Commonwealth asserted that appellant's Fifth Amendment right to counsel had not attached at the point at which he told Detective Tackett that he wished to speak only with an attorney present as appellant was not subjected to custodial interrogation at that time. Further, the Commonwealth argued that appellant initiated the conversation with Detective Wentworth during the trip from the Powhatan Correctional Center to the Powhatan Sheriff's Office the following day. Finally, the Commonwealth argued that appellant waived both his Fifth and Sixth Amendment rights during his interrogation with Lieutenant Wolfe. Alternatively, the Commonwealth argued that the trial court should permit introduction of the firearm into evidence because the public safety exception to *Miranda* permitted the officers to question appellant about the firearm's location.

The trial court denied appellant's motion to suppress, finding that though appellant properly asserted his right to counsel when he spoke to Detective Tackett on the day of his arrest, that appellant subsequently reinitiated contact with the police. Additionally, the trial court found that appellant knowingly and willingly waived both his Fifth and Sixth Amendment rights. Finally, the trial court concluded that the questions specifically concerning the firearm met the public safety exception to *Miranda*.

At appellant's trial, Deputy McDonald, Detective Tackett, Corporal Smith, and Lieutenant Wolfe all testified. At the conclusion of the trial, the jury found appellant guilty on all charges. On August 4, 2014, the trial court sentenced appellant to life imprisonment on both charges of first-degree murder, three years' imprisonment for one count of use of a firearm in the commission of a felony, and five years' imprisonment on the second count of use of a firearm in the commission of a felony. This appeal followed.

II. Analysis

Appellant contends that the trial court erred when it denied his motion to suppress the statements he made to Detective Wentworth and Lieutenant Wolfe on May 23, 2011, as well as the physical evidence (the firearm) that was discovered as a result of those statements to the authorities. Appellant

argues that these statements and the firearm should have been suppressed because the authorities violated both his Fifth and Sixth Amendment right to counsel by subjecting him to interrogation without the benefit of counsel present.

"On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the trial court's decision constituted reversible error." *Quinn v. Commonwealth*, 25 Va. App. 702, 712, 492 S.E.2d 470, 475 (1997). "Although we review the trial court's findings of historical fact only for 'clear error,' we review *de novo* the trial court's application of defined legal standards to the facts of the case." *Giles v. Commonwealth*, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998). "Whether a defendant 'invoked' his *Miranda* right to counsel during custodial interrogation and whether he 'waived' this right are determined by applying judicially declared standards."*Quinn*, 25 Va. App. at 713, 492 S.E.2d at 476.

A. FIFTH AMENDMENT RIGHT TO COUNSEL

"An accused has a right under the Fifth and Fourteenth Amendments to have counsel present during a custodial interrogation." *Correll v. Commonwealth*, 232 Va. 454, 462, 352 S.E.2d 352, 356 (1987) (citing *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) (additional citation omitted)). This rule "provides a 'relatively rigid requirement' that police and prosecutors must observe." *Hines v. Commonwealth*, 19 Va. App. 218, 221, 450 S.E.2d 403, 404 (1994). It requires, when invoked, that all interrogation cease. *Edwards*, 451 U.S. at 484–85, 101 S. Ct. at 1885 ("[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.").

When an accused has invoked his right to counsel, "subsequent waiver of that right is not sufficient to make admissible any incriminating statements thereafter obtained, even if investigators have re-*Mirandized* the accused, unless the statements are initiated by the defendant and shown to be based on a knowing, intelligent, and voluntary waiver." *Giles,* 28 Va. App. at 531, 507 S.E.2d at 105 (citing *Edwards,* 451 U.S. at 484–87, 101 S. Ct. at 1884–86;*Arizona v. Roberson,* 486 U.S. 675, 678–82, 108 S. Ct. 2093, 2096–98, 100 L.Ed.2d 704 (1988)). "Only if the accused initiates further 'communication, exchanges, or conversations with the police,' and only if those communications result in the accused changing his or her mind and freely and voluntarily waiving the right to counsel, may the police resume interrogation without violating the *Edwards* rule." *Id.* at 532, 507 S.E.2d at 105 (quoting *Roberson,* 486 U.S. at 682, 108 S. Ct. at 2098).

We evaluate the admissibility of a statement under the *Edwards* rule using a three-part inquiry.

> First, the trial court must determine whether the accused "unequivocally" invoked his or her right to counsel. Second, the trial court must determine whether the accused, rather than the authorities, initiated further discussions or meetings with the police. Third, if the accused did initiate further discussions or conversations with police, the trial court must then ascertain whether the accused knowingly and intelligently waived the previously invoked right to counsel.

*Id.*

Because the Commonwealth concedes that appellant properly invoked his right to counsel, we need not address the first element of the *Edwards* inquiry. Instead, we first consider *de novo* whether appellant reinitiated conversation with the authorities. *See Rashad v. Commonwealth,* 50 Va. App. 528, 536, 651 S.E.2d 407, 411 (2007).

As the trial court concluded below, appellant asserted his right to counsel when he informed Detective Tackett that he had nothing to say without a lawyer. Aside from his initial request to speak with appellant, Detective Tackett said nothing to appellant, and immediately departed after appellant invoked his right to counsel. Thereafter, Corporal Smith transported appellant to the correctional facility, where upon arrival, appellant initiated conversation with the officer. As appellant exited Corporal Smith's police vehicle, Corporal Smith told appellant, "good luck." Appellant responded, "Good luck? You know what the 'F' I did." Appellant also asked Corporal Smith why the police were "doing a search warrant." Corporal Smith responded by informing appellant that the police were looking for evidence and possibly a firearm. Appellant told Corporal Smith that they "would never find that."

While not all statements initiate a conversation under *Edwards,* such as those that "relat[e] to routine incidents of the custodial relationship," an accused's statements that "evince[ ] a willingness and a desire for a generalized discussion about the investigation" do. *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S. Ct. 2830, 2835, 77 L.Ed.2d 405 (1983) (5–4 decision). Thus, the Court in *Bradshaw* held that the defendant reinitiated conversation with the authorities when he asked police what was going to happen to him next. *Id.* at 1046, 103 S. Ct. at 2835; *see also Correll,* 232 Va. at 463, 352 S.E.2d at 357 (holding that the accused's "statement that he wanted to explain the results of his polygraph test was clearly more than a statement arising from the incidents of the custodial relationship"); *Giles,* 28 Va. App. at 535, 507 S.E.2d at 106 (finding that the accused initiated conversation with the authorities when he stated "he was confused, that he did not understand, and then expressed surprise that he was being charged with robbery").

Like Bradshaw's question to police, appellant's inquiry to Corporal Smith—questioning why the police were "doing a search warrant"—evinced "a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045–46, 103 S. Ct. at 2835. Accordingly, we hold that the trial court correctly determined that appellant initiated a conversation with Corporal Smith following his earlier request for counsel.

But even if a conversation taking place after the accused has expressed his desire to deal with the police only through counsel," is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation. *Id.* at 1044, 103 S. Ct. at 2834. We therefore next consider

> whether a valid waiver of the right to counsel and the right to silence had occurred, that is, *whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances,* including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Id.* at 1045, 103 S. Ct. at 2834 (quoting *Edwards*, 451 U.S. at 486 n. 9, 101 S. Ct. at 1885 n.9) ((emphasis added)). "[W]hether a waiver of *Miranda* rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." *Harrison v. Commonwealth*, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

> [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances. This factual finding will not be disturbed on appeal unless plainly wrong.

*Id.* (quoting *Watkins v. Commonwealth*, 229 Va. 469, 477, 331 S.E.2d 422, 429–30 (1985)).

The trial court determined that "in the context of [his] conversation[s] with [Lieutenant] Wolfe [and Detective Wentworth]," appellant entered "a valid waiver, knowingly and freely made." In making this determination, the trial court relied upon, among other things, that appellant signed an express waiver-of-rights form at the beginning of his interview with Lieutenant Wolfe.

When considering whether an accused knowingly and intelligently waived his or her previously invoked right to counsel, we look to "the totality

15

of the circumstances, including his background and experience and the conduct of the police." *Giles,* 28 Va. App. at 536, 507 S.E.2d at 107 (quoting *Correll,* 232 Va. at 464, 352 S.E.2d at 357). In this case, no evidence suggests that the officers failed to honor appellant's request for counsel. As Detective Tackett testified during the hearing on appellant's motion to suppress, he immediately ended his conversation with appellant once appellant indicated that he had nothing to say without a lawyer. Likewise, Corporal Smith honored appellant's request for counsel while transporting appellant to the Powhatan Correctional facility. As appellant conceded in his motion to suppress, the statements he made to Corporal Smith were "spontaneous and not in response to police questioning."

Though we note that appellant was not *Mirandized* prior to his interactions with Detective Tackett and Corporal Smith, he evinced knowledge of his rights by preemptively invoking his right to counsel. After that point, the officers ceased any questioning until appellant reinitiated conversation with Corporal Smith. Appellant's counsel suggests that there is or should be some temporal limitation on when law enforcement may conduct further questioning of a suspect after he reinitiates conversation where he previously invoked his right to counsel. We find no support in the case law for such a rule and decline to impose one now. Once appellant reinitiated contact with Corporal Smith on May 22, 2011, appellant provided law enforcement with the requisite authority to communicate with appellant, so long as that communication was preceded by or simultaneous with appellant knowingly and intelligently waiving his *Miranda* rights. For purposes of the analysis in this particular case, it was of no consequence that appellant's waiver and the officer-initiated interrogation did not occur until the day after appellant reinitiated contact with Corporal Smith.

We agree with the trial court that appellant knowingly and intelligently waived his *Miranda* rights prior to the interrogation which resulted in recovery of the firearm. Lieutenant Wolfe read appellant his *Miranda* rights upon his arrival at the sheriff's department, and appellant signed an express waiver form prior to making any of the statements to which he objects. Appellant's express waiver is not undercut by the fact that Lieutenant Wolfe admitted that he did not read the portion of the form that indicated appellant waived his rights aloud, as he did read aloud the rest of the form. As the Commonwealth noted below, appellant "had on a number of prior occasions dealt with the police and received *Miranda* warnings," *Correll,* 232 Va. at 464, 352 S.E.2d at 358, as appellant had been previously charged with misdemeanor marijuana offenses. The record indicates that Lieutenant Wolfe advised appellant of and that appellant understood his rights. We find that appellant was capable of effecting a valid waiver and knowingly and freely did so.

16

Because appellant reinitiated conversation with Corporal Smith and voluntarily waived his right to counsel, "[t]he protections provided by *Edwards* disappeared." *Cross v. Texas,* 144 S.W.3d 521, 529 (Tex. Crim. App. 2004). Accordingly, appellant's statements to Lieutenant Wolfe on May 23, 2011, were not the result of police-initiated reinterrogation conducted in violation of *Edwards.* Following appellant's reinitiation of conversation concerning the investigation and subsequent waiver, the authorities were permitted to commence further conversations with appellant-unless appellant reinvoked his right to counsel.

We therefore conclude that the trial court did not err in denying appellant's motion to suppress to the extent it alleged a violation of his Fifth Amendment right to counsel.

### B. SIXTH AMENDMENT RIGHT TO COUNSEL

Appellant also alleges that his statements to Detective Wentworth and Lieutenant Wolfe and the evidence derived therefrom should be suppressed under the Sixth Amendment.

Unlike the right to counsel under the Fifth Amendment, which arises when invoked during custodial interrogation, the right to counsel under the Sixth Amendment arises when adversarial proceedings commence. "The Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Fellers v. United States,* 540 U.S. 519, 523, 124 S. Ct. 1019, 1022, 157 L. Ed.2d 1016 (2004) (quoting *Brewer v. Williams,* 430 U.S. 387, 398, 97 S. Ct. 1232, 1239, 51 L.Ed.2d 424 (1977)). As the Supreme Court has explained,

> Th[is] rule is not "mere formalism," but a recognition of the point at which "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Rothgery v. Gillespie County,* 554 U.S. 191, 198, 128 S. Ct. 2578, 2583, 171 L.Ed.2d 366 (2008) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 1882, 32 L. Ed.2d 411 (1972) (plurality opinion)).

According to appellant, the "prosecutorial process" had commenced by the time of his interactions with Detective Wentworth and Lieutenant Wolfe, as he had been formally arrested for the shootings, had been officially served by law enforcement personnel with four felony warrants charging him specifically with the crimes of first-degree murder with the use of a firearm, had appeared before a magistrate to determine admission to bail, and had spent the night in the county jail. Assuming that appellant's appearance before the magistrate to determine admission to jail marked the

commencement of adversarial proceedings, *seeRothgery,* 554 U.S. at 199, 128 S. Ct. at 2584 (stating that "the right to counsel attaches at the initial appearance before a judicial officer"), we nevertheless affirm the trial court's denial of appellant's motion to suppress.

Citing *Michigan v. Jackson,* 475 U.S. 625, 633, 636, 106 S. Ct. 1404, 1409–10, 1411, 89 L. Ed.2d 631 (1986), appellant contends that "[o]nce the [Sixth Amendment] right attaches, law enforcement is required to deal with a defendant through counsel, rather than directly, even if the defendant has waived his Fifth Amendment rights." Not so. The Supreme Court has explained:

> The fact that petitioner's Sixth Amendment right came into existence with his indictment, i.e., that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned. Had petitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting). This was our holding in *Michigan v. Jackson, supra,* which applied *Edwards* to the Sixth Amendment context. We observe that the analysis in *Jackson* is rendered wholly unnecessary if petitioner's position is correct: under petitioner's theory, the officers in *Jackson* would have been completely barred from approaching the accused in that case unless he called for them. Our decision in *Jackson,* however, turned on the fact that the accused "ha[d] asked for the help of a lawyer" in dealing with the police.

*Patterson v. Illinois,* 487 U.S. 285, 290–91, 108 S. Ct. 2389, 2394, 101 L.Ed.2d 261 (1988).

Appellant, of course, contends that he made known to the authorities his desire to have the assistance of counsel on May 22, 2011, when he informed Detective Tackett that he had nothing to say without a lawyer. But that request for counsel preceded commencement of adversarial proceedings against appellant, even under appellant's reasoning, because appellant was merely under arrest and had not yet been served "felony warrants" or taken "before [the] magistrate to determine admission to jail." *See United States v. Gouveia,* 467 U.S. 180, 190, 104 S. Ct. 2292, 2298, 81 L. Ed.2d 146 (1984) ("[W]e have never held that the right to counsel attaches at the time of arrest."); *see also Tipton v. Commonwealth,* 18 Va. App. 832, 835, 447 S.E.2d 539, 541 (1994) ("Arrest is not a 'formal charge' that constitutes the initiation of adversarial proceedings."). In other words, in response to custodial interrogation, appellant asserted his Fifth Amendment right to counsel, which does not "create a Sixth Amendment right." *Id.* ("Although

18

> [appellant] properly asserted his Fifth Amendment right to counsel, one 'cannot create a Sixth Amendment right by asserting that he is exercising his Fifth Amendment right.'" (quoting *Lafon v. Commonwealth*, 17 Va. App. 411, 424, 438 S.E.2d 279, 287 (1993))). Because appellant at "no time [thereafter] sought to exercise his [Sixth Amendment] right to have counsel present," the Sixth Amendment did not bar the authorities from initiating conversation with appellant outside the presence of counsel. *Patterson*, 487 U.S. at 290, 108 S. Ct. at 2394.
> 
> Moreover, as the trial court concluded below, appellant waived his right to counsel under the Sixth Amendment when he "reinitiated contact with the police indicating a desire to communicate with the police, and thereafter executed a signed waiver of his rights under *Miranda* in a knowing, voluntary and intelligent manner." As the Supreme Court has explained:
>> As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda*, 384 U.S. at 479 [86 S. Ct. at 1630–31], has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.
> 
> *Id.* at 296, 108 S. Ct. at 2397.
> 
> For the foregoing reasons, we find no error below, and we affirm the trial court's decision to deny appellant's motion to suppress.

*Overbey v. Commonwealth*, 779 S.E.2d 849, 850–58 (Va. Ct. App. 2015) (alterations in original). The Court discerns nothing unreasonable about the Court of Appeals of Virginia's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim 4 will be dismissed.

## IV. CONCLUSION

Overbey's claims will be dismissed. The Motion to Dismiss (ECF No. 8) will be granted. Overbey's Motion for Respondent to Provide Transcripts and Other Items (ECF

No. 13) will be denied.[2] The § 2254 Petition will be denied. The action will be dismissed. A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                             /s/
                             HENRY E. HUDSON
                             SENIOR UNITED STATES DISTRICT JUDGE

Date: May 4, 2020
Richmond, Virginia

---

[2] On September 13, 2019, the Court received from the record from the Circuit Court. The record included, among other things, the transcript of the suppression hearing conducted on April 11, 2014, the trial transcript, the Circuit Court's orders, and Overbey's psychological evaluations.